## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

KATHERINE MCNULTY,

        Plaintiff,

v.                                      No. CIV 05-221 BB/ACT

SANDOVAL COUNTY and the
SANDOVAL COUNTY BOARD OF
COUNTY COMMISSIONERS,

        Defendants.

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court pursuant to motions to dismiss filed by Defendants (Docs. 3, 21).  The Court considers the second motion to dismiss as superseding the first motion, and will therefore deny the first one.  Having considered the submissions of the parties and the applicable law concerning the second motion to dismiss, the Court will grant the motion in part and deny it in part.

### BACKGROUND

This case arises out of events occurring while Plaintiff was employed as a Sandoval County personnel coordinator.  As a result of adverse employment actions taken by Defendants, Plaintiff has brought the following causes of action: (1) a Title VII claim under 42 U.S.C. § 2000e-3; (2) a claim under the New Mexico Human Rights Act ("NMHRA"), NMSA §§ 28-1-7 *et seq.*; (3) a wrongful termination claim; (4) a civil-rights claim under  42 U.S.C. § 1983; (5) an administrative appeal of Plaintiff's suspension and of her subsequent termination; and (6) a claim under the New Mexico Inspection of Public Records Act ("IPRA"), NMSA §§ 14-2-1 *et seq.*  Plaintiff requested punitive damages under her first, second, third, and fourth causes of action.  Defendants have moved to

dismiss Plaintiff's third, fourth, fifth, and sixth causes of actions, as well as Plaintiff's requests for punitive damages.

## STANDARD

In considering a motion to dismiss, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. " *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991).

## DISCUSSION

### I. Wrongful Termination Claim

Defendants have moved to dismiss Plaintiff's state-law claim of wrongful termination on the ground that the New Mexico Tort Claims Act immunizes Defendants from liability for such a tort. Plaintiff's response concedes that this is true, but maintains this claim is a breach-of-contract claim rather than a tort claim. The Court will accept Plaintiff's characterization of her claim as a contract claim, despite the fact that Plaintiff's amended complaint uses a great deal of language more appropriate to a retaliatory-discharge tort claim--for example, Plaintiff included references to Defendants' violations of public policy, her opposition to those violations, and her termination in retaliation for that opposition. *See, e.g., Michaels v. Anglo American Auto Auctions*, 869 P.2d 279, 280 (N.M. 1994) (outlining elements of retaliatory-discharge claim). Plaintiff also, however, included a phrase stating that her termination was in violation of "the implied and express contract

2

contained in the County's Personnel Ordinance." [Amended Compl., par. 66]  This phrase, as well as the recitation of facts earlier in the amended complaint, states a cause of action for breach of contract.  For that reason, to the extent Defendants seek to have the breach of contract claim dismissed, the motion will be denied; to the extent Defendants wish to dismiss the tort claim of retaliatory discharge that is stated in the amended complaint but abandoned by Plaintiff in her response, the motion will be granted.[1]

**II. 42 U.S.C. § 1983 Claim**

Plaintiff has raised three separate constitutional claims as part of her § 1983 count:  a First Amendment retaliation claim, a claim for violation of her right to procedural due process, and a claim for violation of her right to substantive due process.  In the motion to dismiss, Defendants make one global argument that applies to all three claims, and then attack the merits of each claim individually. The Court will address these arguments separately.

Defendants' global argument maintains that Plaintiff has failed to allege that her rights were violated pursuant to an official Sandoval County custom or policy.  That failure, according to Defendants, prevents Plaintiff from being able to pursue a municipal-liability claim, which is the only type of claim Plaintiff has raised in this lawsuit.[2]  As Plaintiff points out in her response, however, the

---

[1]Defendants argue that Plaintiff's breach-of-contract allegations are "self-serving and conclusory" and therefore do not adequately state a claim.  [Reply, p. 2]  However, Plaintiff alleged, in substance, that she was terminated for reasons that had nothing to with her performance, and her termination violated her contract of employment.  These assertions are sufficient to state a claim for breach of contract.

[2]Plaintiff sued only the County and the County Commissioners, and did not name any other individual defendants.  Since there is no allegation that the Commissioners were personally involved in any of the events that occurred, it is obvious that Plaintiff is suing them in their official capacity, which is the same thing as suing the County as an entity.  *See Booker v. Bd. of Educ.*, 238 F.Supp.2d 469, 475 (N.D. N.Y. 2002).  Therefore, Defendants are correct in their assertion that the only § 1983 claims Plaintiff is pursuing are municipal-liability claims.

existence of a custom or policy is not the only way a plaintiff can establish municipal liability in a §
1983 case.  A plaintiff may also show that a person who possesses final policymaking authority in a
certain area made the final decision resulting in the alleged constitutional violation.  *See Randle v.
City of Aurora*, 69 F.3d 441, 447-48 (10th Cir. 1995) (specific decision made by an official with final
policymaking authority is considered a decision of the municipality for purposes of § 1983).  The
crucial issue with respect to municipal liability, therefore, is whether Plaintiff has adequately stated
that the constitutional violations she alleges were carried out by an official or officials possessing final
policymaking authority in the relevant areas.  Plaintiff has alleged that the due process violations and
the termination of her employment were the actions of a person named Tammie Gerard; an
unidentified Sandoval County Manager; the hearing officer who presided over her pre-termination
hearing; and the hearing officer presiding over her post-termination hearing. [First Amend. Compl.
pars. 37-38, 41-48, 72]  Plaintiff has also alleged that the actions of the county manager and hearing
officer are the actions of the County itself.  [*Id.*, par. 72]  This is a sufficient allegation that the county
manager and hearing officer are officials with policymaking authority over the area of employment
terminations for Sandoval County employees.  At this point, therefore, the municipal-liability claims
will be allowed to proceed.  Defendants are of course not precluded from later establishing that no
policy-making official was involved in the actions Plaintiff complains of.

**A. First Amendment Retaliation Claim:**  Plaintiff has alleged that she made statements
concerning matters of public concern, such as sexual harassment and a county official driving a public
vehicle while intoxicated.  [First Amend. Compl. pars. 73, 74]  Plaintiff has also alleged that these
statements were motivating factors in the decision to terminate her employment.  [*Id.*]  These
allegations are sufficient to state a claim for retaliation in violation of the First Amendment. *See Baca
v. Sklar*, 398 F.3d 1210, 1218-19 (10th Cir. 2005) (elements of such claim include speech on a matter

4

of public concern, and speech was motivating factor behind adverse employment action). Defendants, however, argue this claim should be dismissed because there was a legitimate, non-retaliatory reason for discharging Plaintiff, and because her statements were not matters of public concern. [Mot. Dism. pp. 7-9, Reply pp. 4-5] In so arguing, however, Defendants rely on "facts" that are not contained in the amended complaint, and on inferences not favorable to Plaintiff that are drawn from that complaint. These arguments are therefore not proper as part of a motion to dismiss, and are more appropriately raised after both sides have had an opportunity to perform discovery. *See, e.g., Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1117 (D.C. Cir. 2000) (where employer claims nondiscriminatory reason for its actions, plaintiff must have opportunity for discovery to attempt to show reason is pretext for discrimination, and motion to dismiss should not have been granted). At this stage of the case, as pointed out above, the Court must accept all well-pleaded factual allegations in the complaint as true, and view those allegations in the light most favorable to Plaintiff. *See Sutton, supra,* 173 F.3d at 1236. Doing so, the Court finds Plaintiff has stated a cause of action for First Amendment retaliation.

**B. Procedural Due Process Claim:** Plaintiff brings this claim even though she received both a pre-termination hearing and a post-termination hearing. The requirements for each type of hearing are different, and under Tenth Circuit precedent the failure to provide an adequate pre-termination hearing can constitute a due-process violation even if an adequate post-termination procedure is provided. *See Montgomery v. City of Ardmore*, 365 F.3d 926, 937 (10th Cir. 2004) ("Post-termination remedies, no matter how elaborate, do not relieve the employer of providing the *minimal* pre-termination procedural protections noted in *Loudermill*." (emphasis in original)). The Court will therefore examine the allegations of the amended complaint as to both the pre-termination hearing

and the post-termination hearing to determine whether a due-process claim has been adequately alleged.

**1. Pre-Termination Hearing:**  With respect to the pre-termination hearing, Plaintiff alleges a hearing was held before "a  'neutral' hearing officer..."  [Am. Compl. par. 36, quotes in original] Plaintiff also alleges that "Tammie Gerard attempted to prevent Plaintiff's counsel from speaking, in violation of the County personnel ordinance and in violation of due process."  [*Id.* par. 37]  Finally, Plaintiff alleges that Ms. Gerard, rather than the hearing officer, decided to terminate Plaintiff after the hearing.  These allegations fail to state a due-process violation.  The pre-termination hearing that must be provided to an employee is minimal, as the *Montgomery* opinion points out.  All that is required is oral or written notice to the employee of the charges against her, a summary of the employer's evidence, and an opportunity for the employee to present her side of the story. *Montgomery*, *supra*, 365 F.3d at 936.  In fact, under Tenth Circuit law a brief face-to-face meeting with the employee's supervisor satisfies the requirements for a pre-termination hearing.  *See Hulen v. Yates*, 322 F.3d 1229, 1248 (10th Cir. 2003); *West v. Grand County*, 967 F.2d 362, 368 (10th Cir. 1992).  According to Plaintiff's own allegations, she received a much more elaborate pre-termination hearing than a simple meeting with her supervisor.

In addition, Plaintiff's specific allegations of problems with the hearing--that Ms. Gerard made the termination decision rather than the hearing officer, and that Ms. Gerard attempted to prevent Plaintiff's counsel from speaking--do not rise to the level of a due process violation.  Plaintiff was not constitutionally entitled to an independent or impartial decision-maker at the pre-termination stage, and was not constitutionally entitled to have an attorney present.  *Cf. id.*  The fact that Ms. Gerard's actions might have violated the local personnel ordinance does not state a due-process claim.  *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 522 (10th Cir. 1998) (university's failure to

follow its established guidelines for handling grievances does not, in and of itself, implicate due process concerns).  According to Plaintiff's own allegations, she was provided with an opportunity to explain her side of the story, at the pre-termination hearing presided over by the hearing officer.  Nothing more is required by the due-process clause.

**2.  Post-termination Hearing:**  The problem with Plaintiff's claim of post-termination violations of due process is that the claim is premature.  The post-termination remedies provided by Defendants' personnel code include the administrative hearing that has already been held, followed by an appeal to the district court.  [Resp. to MSJ, Exh. A, p. 34]  One of Plaintiff's claims in this case, however, is the district-court appeal of the administrative decision upholding her termination.  In other words, this lawsuit is part of Plaintiff's post-termination remedies, and Plaintiff is still in the midst of pursuing the post-termination remedies to which she is entitled.  Since Plaintiff has not yet finished the process provided by Defendants for challenging her termination, it would be premature for the Court to try to determine whether that post-termination process is constitutionally inadequate.  *See Faerber v. City of Newport*, 51 F.Supp.2d 115, 120 (D. R.I. 1999) (where complaint in federal district court included appeal of administrative decision, the lawsuit was part of plaintiff's state remedy, plaintiff had not yet exhausted his administrative remedies, and due process claim was dismissed); *cf. Tonkovich, supra*, 159 F.3d at 525-26 (treating available state-court judicial review of dismissal as part of process provided by the state).[3]

_____

[3]Two points must be noted here.  First, the Court's finding of prematurity is not a determination that Plaintiff must exhaust her administrative remedies before she can bring a § 1983 claim.  The *Tonkovich* opinion specifically states that such exhaustion is not required in the Tenth Circuit.  *But see Dotson v. Griesa*, 398 F.3d 156, 161 n. 2 (2d Cir. 2005) (while exhaustion of remedies is not generally required before plaintiff may bring a § 1983 lawsuit, this rule does not apply to procedural due process challenges if the plaintiff failed to avail himself of the very procedures he attacks as inadequate).  Instead, the Court is simply holding that it is impossible to determine whether Defendants' post-termination procedures are constitutionally inadequate, when

For the above reasons, the Court will dismiss Plaintiff's post-termination due-process claim as well.  The Court recognizes that Plaintiff has not had an opportunity to address the prematurity issue, since the Court has raised the matter on its own motion.[4]  Therefore, if Plaintiff can find persuasive authority indicating the post-termination process issue is not being raised prematurely, the Court is willing to reconsider this decision.

**C.  Substantive Due Process Claim:**  In Defendants' brief in chief, Defendants argued that in order to constitute a substantive due process violation, its actions must be of a type that would shock the conscience.  [2d Mot. Dism.  pp. 10-11]  In response, Plaintiff claimed that Defendants used the wrong test, maintaining that in the public-employment context the shock-the-conscience test does not apply.  [Resp. pp. 13-14]  Plaintiff's argument is incorrect.  The Tenth Circuit, albeit somewhat ambiguously, has held that in order to violate an employee's substantive due process rights, a public employer's actions must be so arbitrary as to shock the conscience.  *Garcia v. City of Albuquerque*, 232 F.3d 760, 771 (10th Cir. 2000) (Tenth Circuit applies shock-the-conscience standard in determining whether city's actions were "arbitrary"); *cf. Tonkovich, supra*, 159 F.3d at 529 (noting some indication that "arbitrariness" and "shock the conscience" tests are interchangeable, but ultimately refusing to decide whether shock-the-conscience test applies to employment cases).

---

a portion of the action before the Court is an incomplete segment of those same procedures. Second, the Court's holding has nothing to do with pre-termination process; as pointed out above, in the Tenth Circuit  deprivation of the right to a pre-termination hearing is an immediate due-process violation, no matter what type of post-termination process is provided.

[4]The Court has done so because ripeness is a jurisdictional issue, and therefore must be raised by the Court *sua sponte* if there is some question as to whether a case is ripe for adjudication.  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *Utah v. U.S. Dep't of Interior*, 210 F.3d 1193, 1196 n. 1 (10th Cir. 2000).  The Court views the prematurity issue as a ripeness question.

 The Court finds no reason not to apply the traditional shock-the-conscience test to substantive due process claims arising in the context of public employment.

Applying that test and viewing the allegations in the amended complaint in the light most favorable to Plaintiff, the Court finds the amended complaint does not state a claim for a substantive due process violation.  Plaintiff alleges that Defendants retaliated against her in violation of federal law, failed to investigate properly, used pretextual reasons as excuses to terminate her employment, provided an unfair hearing, deprived her of access to needed documents, and allowed her to be sexually harassed.  In order to constitute a violation of substantive due process, however, Defendants' actions must have been more than mere statutory violations or tortious acts.  *See Garcia, supra.*  Otherwise, a § 1983 action for substantive due process will simply become a substitute for the statutory and common-law remedies  already available to plaintiffs.  Defendants' actions had to be more than an abuse or misuse of government power; they had to demonstrate a degree of outrageousness and a magnitude of harm that is truly conscience-shocking.  *Tonkovich, supra,* 159 F.3d at 528.  Plaintiff's allegations simply do not rise to that level.  Employees are often treated unfairly, discriminated against, or retaliated against.  Rarely, however, will such actions be so unusual and arbitrary as to be considered a substantive due process violation, and the actions alleged in this case are not of that rare type.  Plaintiff's claim of substantive due process will be dismissed.

## III.  Administrative Appeals of Suspension and Termination

**Suspension:**  As pointed out above, Plaintiff was first suspended from her job, and then terminated.  Her original complaint contained an appeal of the suspension decision only; her amended complaint appeals both the suspension and the termination.  These administrative appeals are pursuant to the Sandoval County personnel ordinance provision cited in the preceding section.  With respect to the suspension appeal, Defendants argue the appeal is untimely, citing to

the New Mexico Rules of Civil Procedure ("Rules").  According to Defendants, Plaintiff had only thirty days in which to file her appeal, and she missed that deadline by approximately two and one-half months.  *See* NMRA 1-074 and 1-075.

Plaintiff responds by arguing that Sandoval County is not governed by the time limits contained in the Rules, because it is not an "agency" covered by the statute authorizing appeals from agency action.  NMSA § 39-3-1.1(A) (provisions of statute apply only to judicial review of agency final decisions contained in specific statutory references).  Plaintiff's argument fails, however, because the Rules address both appeals governed by § 39-3-1.1 and appeals in cases where there is no statutory right of review.  NMRA 1-074 (applies where there is statutory right of review); 1-075 (applies where there is no such right of review).  Under both Rule 1-074 and 1-075, then, a party aggrieved by a decision of an agency must initiate an action in state court within thirty days, by filing either a notice of appeal (under Rule 1-074) or a petition for writ of certiorari (under Rule 1-075).[5]  Since Plaintiff's complaint was not filed within thirty days of the date her suspension became final, her appeal of that decision is not timely.

**Termination:**  The only argument Defendants make concerning the termination appeal is that Plaintiff failed to attach a copy of the administrative decision to her amended complaint.  This is not a jurisdictional defect or a sufficient reason to dismiss Plaintiff's challenge to the administrative decision upholding her termination.  In order for the Court to properly review the decision, however, Plaintiff is ordered to file a copy of the decision with this Court within ten

---

[5]Although Plaintiff filed neither a notice of appeal nor a petition for writ of certiorari in this case, the Court construes her complaint and amended complaint as a petition for writ of certiorari.  This is because in New Mexico, when no statutory right of appeal exists, the only means of obtaining judicial review of a personnel decision made by a local government entity is by way of a writ of certiorari.  *See Zamora v. Village of Ruidoso*, 907 P.2d 182, 188 (N.M. 1995); *see also West Gun Club Neighborhood Ass'n v. Extraterritorial Land Use Authority*, 22 P.3d 220, 221 (N.M. App. 2001) (notice of appeal may be treated as petition for writ of certiorari).

days, and to refer to that filed decision by document number in any subsequent memoranda, concerning that decision, that may be filed in this matter.

## IV.  Inspection of Public Records Act Claim

Plaintiff alleged that she submitted a written request to inspect public records, pursuant to New Mexico's public records statute, NMSA §§ 14-2-1 *et seq.*, but was not allowed to perform that inspection.  She also alleged that she has never been provided a written explanation for the denial, in violation of § 14-2-11.  Nevertheless, Defendants maintain Plaintiff has not stated a cause of action under the statute because the documents she sought to inspect are confidential. The confidentiality of the documents, however, is not a matter to be decided on a motion to dismiss.  On the face of Plaintiff's amended complaint, accepting her allegations as true, she alleges a violation of the public records statute, and that statute provides a private remedy for such violations.  §§ 14-2-11, 14-2-12.  Defendants' defense to the claim, which relies on facts not alleged in the amended complaint, is a matter to be resolved on summary judgment or at trial. The request to dismiss this claim will be denied.

## V.  Requests for Punitive Damages

Plaintiff has requested punitive damages pursuant to the following claims:  (1) her Title VII claim, the first cause of action; (2) the second cause of action, under the New Mexico Human Rights Act; (3) the third cause of action, for breach of an employment contract; and (4) the fourth cause of action, pursuant to § 1983.  Defendants contend Plaintiff cannot recover punitive damages under any of these claims.  In response, Plaintiff agrees the New Mexico Human Rights Act does not allow punitive damages against a governmental entity such as the County, but maintains she can recover such damages pursuant to the other three causes of action.  The Court disagrees.

As to Plaintiff's "wrongful termination" cause of action, which Plaintiff has agreed is actually a breach-of-contract claim, punitive damages are not recoverable against a government entity such as Defendants.  *See Barreras v. State of New Mexico Corrections Dep't*, 62 P.3d 770, 774 (N.M. App. 2002) (discharged state employee could not recover punitive damages in breach-of-employment-contract lawsuit).  Plaintiff's reliance on *Gandy v. Wal-Mart Stores, Inc.*, 872 P.2d 859 (N.M. 1994), is misplaced because that case did not involve a lawsuit against a government entity.  Accordingly, Plaintiff cannot recover punitive damages under this claim.

Similarly, punitive damages may not be assessed against a county under either Title VII or § 1983.   *See* 42 U.S.C. § 1981a(b)(1) (punitive damages in Title VII case not available from "government, government agenc[ies] or political subdivision[s]"); *Oden v. Oktibbeha County,* 246 F.3d 458, 465-66 (5th Cir. 2001) (district court committed plain error by assessing punitive damages against county sheriff in his official capacity, because § 1981a(b)(1) precludes such an award); *Hodoh-Drummond v. Summit County*, 84 F.Supp.2d 874, 885 (N.D. Ohio 2000) (§ 1981a(b)(1) bars recovery of punitive damages against political subdivisions in Title VII claims, and county-defendant is a political subdivision); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (punitive damages not available in § 1983 cases against municipalities); *Doe v. County of Centre*, 242 F.3d 437, 455 (3d Cir. 2001) (citing *City of Newport* for proposition that local government entities such as counties are immune from punitive damages in § 1983 lawsuits); *Coleman v. Kaye*, 87 F.3d 1491, 1506 (3d Cir. 1996) (same); *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (same).  The motion to dismiss will therefore be granted as to all of Plaintiff's claims for punitive damages.

**ORDER**

Based on the foregoing memorandum opinion, Defendants' second motion to dismiss

(Doc. 21)  will be GRANTED as to the following claims: (1) the wrongful termination claim, to

the extent it is brought as a tort cause of action rather than a breach-of-contract claim; (2) the

procedural and substantive due-process claims; (3) the administrative appeal of Plaintiff's

suspension; and (4) all claims for punitive damages.  Dismissal will be DENIED as to Plaintiff's

breach-of-contract claim, her First Amendment retaliation claim, the inspection-of-public-records-

act claim, and the appeal of her termination.  Those claims will be allowed to proceed, along with

the other causes of action that were not the subject of Defendants' summary-judgment motion.  In

addition, Defendants' first motion to dismiss (Doc. 3) will be DENIED as moot.

Dated this 15th day of August, 2005.

_Bruce D Black_
BRUCE D. BLACK
United States District Judge


**Attorneys:**

**For Plaintiff**
Michael J. Cadigan

**For Defendants**
William D. Slease
Jonlyn M. Martinez

13