# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

KATHERINE MCNULTY

       Plaintiff,

v.                                                                                    Civil No. 05-221 WJ/ACT

SANDOVAL COUNTY and the
SANDOVAL COUNTY BOARD OF
COUNTY COMMISSIONERS,

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS

THIS MATTER comes before the Court pursuant to Defendants' Motion for Summary Judgment (Doc. 135). Having reviewed the submissions of the parties, having considered oral arguments of counsel and being fully advised on the relevant law, I conclude the motion is well taken in part and will be granted in part for the reasons that follow. Further, I will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and will dismiss these without prejudice.

## BACKGROUND

Plaintiff filed her complaint in this matter on February 28, 2005 alleging retaliation under Title VII and the New Mexico Human Rights Act, wrongful termination, intentional infliction of emotional distress, violation of her First Amendment right to free speech, violation of the New Mexico Inspection of Public Records Act, and a separate claim appealing the administrative

decision of suspension.  On April 25, 2005, Plaintiff filed a First Amended Complaint adding

claims under Title VII and the New Mexico Human Rights Act for hostile work environment

sexual harassment and quid pro quo sexual harassment.  She also added a claim under 42 U.S.C. §

1983 for violation of her substantive and procedural due process rights under the Fourteenth

Amendment.  Her First Amended Complaint did not reallege her claim for intentional infliction of

emotional distress.  Defendants filed the instant motion for summary judgment on December 19,

2005.  Viewing the evidence in a light most favorable to Plaintiff as the Court must in deciding a

motion for summary judgment, the pertinent facts may be summarized as follows.

 Plaintiff was employed by the County of Sandoval ("County").  In July of 2001, Plaintiff

was promoted to the position of personnel coordinator.  As personnel coordinator, it was

Plaintiff's responsibility to teach the National Safety Council (NSC) defensive driving course to all

County employees who had access to County vehicles and to maintain the records showing the

employees who had taken the course.  This course was a requirement of the New Mexico

Association of Counties (NMAC) and a requirement for maintaining the County's insurance

premium.  The County paid for Plaintiff's attendance at an NSC defensive driving course in 2001.

Plaintiff knew that persons who took the course from her would not be properly certified if she

did not maintain her good standing with the NSC.[1]

---

[1]This is from Defendants' Undisputed Material Fact (UMF) #1.  Plaintiff disputed this fact
on the basis that the referenced exhibit did not support it.  Defendants cited to pages 690 and 691
of the transcript of Plaintiff's testimony at her administrative hearing in support of the UMF.  The
support for this UMF is actually found at page 696.  Therefore, while Defendants cited the
incorrect page number, the exhibit itself does support the UMF, and Plaintiff provides no evidence
to dispute this fact.

In January 2002, Plaintiff was allegedly propositioned sexually by Leroy Arquero, the Finance Director for Sandoval County.  Plaintiff did not report this incident at the time it occurred.

In 2002, Plaintiff decided she wanted to privately teach the defensive driving course to non-County employees.  Plaintiff's supervisor, Tammy Gerrard, told Plaintiff that she was free to teach the course privately provided that it did not interfere with her responsibilities as personnel coordinator.  Ms. Gerrard also informed Plaintiff that she could not use the County's teaching kit to provide these private courses.  Thus, in June 2002, Plaintiff purchased her own teaching kit to teach the defensive driving course to non-County employees.  The video that is included in the teaching kit cannot be purchased but must be rented annually from the NSC.

On August 6, 2002, Plaintiff received an oral reprimand from Ms. Gerrard for failure to return telephone calls.  Prior to this reprimand, Plaintiff had been employed for 12 years with the County and had never received any formal discipline.  According to the County Manager, Plaintiff had been a good employee until this time.  On October 10, 2002, Plaintiff received a written reprimand from Ms. Gerrard for failure to follow directions.  In this reprimand, Plaintiff was informed that her failure to follow directions constituted unsatisfactory job performance.

In June 2003, Plaintiff failed to pay the annual rental fee for the video in her personal teaching kit, and she did not return the video to the NSC.  Due to this failure, Plaintiff was no longer in good standing with the NSC and was not certified to teach the defensive driving course to County employees.  However, Plaintiff did not inform her supervisor that she was no longer in good standing with the NSC, and she continued to teach the course to County employees through December 2003.  Consequently, the employees who took the defensive driving course from

3

Plaintiff between June 2003 and December 2003 were not properly certified because Plaintiff was not in good standing with the NSC when she taught those courses.

In October 2003, Ms. Gerrard learned from Steve Chappel of the NMAC that Plaintiff was no longer certified to teach the NSC defensive driving course.  Ms. Gerrard instructed Plaintiff to take care of her certification, and Plaintiff indicated that she would.  Plaintiff did not at that time obtain recertification.

On November 15, 2003, Plaintiff received an oral reprimand from Ms. Gerrard for failure to return phone calls.  Plaintiff was informed in the memorandum of oral reprimand that her failure to return phone calls was considered unsatisfactory job performance.

In December 2003, Plaintiff sent an e-mail to Ms. Jaquez at the NSC in which she said she was sending the video back to the NSC.  She did not send the video back.  In January 2004, Plaintiff sent an e-mail to Ms. Jaquez indicating that she would be mailing a check to pay for the video.  Plaintiff did not send a check at that time.  In March 2004, Plaintiff told Ms. Gerrard that her copy of the video had been destroyed in a flood at the County building in February 2003.  Ms. Gerrard instructed Plaintiff to speak with the County Attorney regarding the destroyed video to find out what might be done to get Plaintiff's certification reinstated.  According to Plaintiff, she contacted the County Attorney and provided all the information he requested.  Because Plaintiff was not certified to teach the defensive driving course, she was unable to teach the course and the Assistant Fire Marshal for the County had to teach the course.

Plaintiff's first report of any sexual harassment by Mr. Arquero was in a memorandum to Ms. Gerrard dated June 27, 2004.[2]  In the memo, Plaintiff contended that she had been "experiencing significant and continuing difficulty in dealing with Leroy Arquero."  Docket No. 135 Exhibit O.  She indicated that Ms. Gerrard had been aware of her problems with Arquero for quite some time, and that other current and former County employees had similar encounters with him involving "harassment."  Id.  Plaintiff stated that, "[h]is continuing harassment of me creates a hostile working environment."  Id.  Plaintiff then recounted two incidents of Mr. Arquero's harassing conduct.  In the first incident, Plaintiff was waiting for an elevator.  When it arrived and the doors opened, Mr. Arquero was already on the elevator with other County employees.  Plaintiff said she would wait for the next elevator, and she heard laughter as the elevator doors closed.  In the second incident, Plaintiff encountered Mr. Arquero at the copy machine.  No words were spoken, but Plaintiff could tell by Mr. Arquero's body language and eye contact that he was not happy to see her.  Another employee later remarked to Plaintiff that Mr. Arquero had been hostile and disrespectful toward Plaintiff during that encounter.  Plaintiff then commented that she could no longer ignore Mr. Arquero's "suggestive remarks, derogatory manner and

---

[2]Plaintiff's First Amended Complaint alleges that Plaintiff reported the harassment to Ms. Gerrard in May 2002.  See Docket No. 13 ¶ 13.  However, this allegation appears to have been abandoned based on Plaintiff's Additional Fact #1.  See Docket 145 p. 4.  Additionally, this allegation is not supported by the evidence.  Defendants submitted some notes prepared by Plaintiff with her attorney that were provided in response to a Request for Production.  See Exhibit Q to Defendants' Motion for Summary Judgment.  These notes indicate that Plaintiff had a conversation with Ms. Gerrard about Mr. Arquero in May 2002, but the notes are not verified or sworn testimony.  Plaintiff's verification that accompanied her response to Defendants' request for production authenticates the notes but does not convert them from unsworn notes to sworn testimony.  Even if the Court were to consider these notes, there is nothing to indicate that the conversation Plaintiff had with Ms. Gerrard in May 2002 concerned sexual harassment or any other Title VII violation by Mr. Arquero.

outright hostility." Id.  She ended the memo by asking that it be treated as a formal complaint of sexual harassment against Leroy Arquero.

In response to Plaintiff's complaint, Ms. Gerrard sent a memo to Plaintiff dated June 30, 2004 requesting additional information in order to investigate the complaint.  Plaintiff's response to the request for additional information was a memorandum to Ms. Gerrard dated July 5, 2004.  In this memo, Plaintiff stated there had been ten to twelve incidents between herself and Mr. Arquero occurring between the spring of 2002 and the time of the memo that Plaintiff considered sexual harassment creating a hostile work environment.  Plaintiff then reported that Mr. Arquero becomes verbally abusive toward employees who are in subordinate positions around the end of every fiscal year and at the beginning of every calendar year.  She also reported the following specific incidents:

- On March 27, 2002, while Plaintiff was preparing requisitions for the payment of premiums on various County insurance policies, she had a meeting with Mr. Arquero in his office.  "[H]e was disrespectful and verbally abusive, including derogatory references to my gender and intelligence."  Mr. Arquero belittled Plaintiff for being unable to complete the project.

- In the spring of 2003 while preparing the insurance premium requisitions, she met with Ms. Gerrard and Mr. Arquero.  Mr. Arquero told Ms. Gerrard that Plaintiff had made an error in the requisition for the workers compensation premium.  Plaintiff reviewed the requisition and discovered that the error was due to a mistake by Mr. Arquero.  When Plaintiff pointed out that the error was Mr. Arquero's and not hers, Mr. Arquero became visibly angry and made derogatory comments about Plaintiff.

- Shortly after the spring of 2003, the County changed the requisition procedures and held a series of meetings for County employees who handled requisitions.  Plaintiff and Ms. Gerrard, who is also a woman, were not notified of the meetings, and their attendance was requested at one of the meetings with no advance notice.  When they arrived at the meeting,

Mr. Arquero refused to provide them with copies of the written materials that had been given to the other attendees.

• Plaintiff recounted the elevator incident she had reported in her June 27, 2004 memo.

• In the fall of 2002, Plaintiff observed Mr. Arquero driving a car that looked like a County vehicle. It was public knowledge that Mr. Arquero had recently been arrested for DWI, and Plaintiff thought Mr. Arquero's driver's license had been suspended as a result. Plaintiff asked the receptionist whether the car being driven by Mr. Arquero was a County vehicle. Shortly thereafter, Plaintiff received a phone call from Mr. Arquero. He was "extremely upset and abusive." He told Plaintiff it was none of her business what vehicles he drove, and that she should not talk with any other County employees about his situation if she wanted to keep her job.

• In January 2003, Plaintiff went to the office of the County Manager to deliver time sheets. Mr. Arquero was in the doorway of the office. Plaintiff waited for Mr. Arquero to acknowledge her presence by stepping aside and letting her into the office. He appeared to be aware of her presence but continued to ignore her. The County Manager made a comment indicating that Plaintiff should enter the office. According to Plaintiff, "[i]n the process of going through the door occupied by Mr. Arquero, he made contact with my body in a manner that was clearly inappropriate. He did not apologize for the contact, leaving the distinct impression that his actions were intentional."

• In May 2004, Plaintiff went to Mr. Arquero's office looking for Ms. Gerrard who had stated she would be in Mr. Arquero's office. Ms. Gerrard was not there. Plaintiff asked Mr. Arquero if Ms. Gerrard had been there. He did not respond to the question but made a rude gesture then ignored Plaintiff.

• Plaintiff recounted the copy machine incident reported in her June 27, 2004 memo, but clarified that this incident had occurred on June 25, 2004.

• Plaintiff was told by another employee that Mr. Arquero had said, "I don't know why they gave that award to her, she didn't deserve it." This statement was allegedly made on June 25, 2004 in reference to a newspaper article on the workers compensation award presented to the County at the NMAC conference.

7

Docket 135 Exhibit P.  Plaintiff's memo then stated that other employees experienced harassment by Mr. Arquero and that his position as Finance Director gave him influence in every department. She then stated that the County Manager's lack of attention to this problem allowed Mr. Arquero to continue his abusive behavior, there appeared to be a tacit understanding that Mr. Arquero was not required to conform to reasonable standards of conduct, that employees were required to tolerate the abuse or avoid contact with Mr. Arquero, and that this was demeaning to employees. Plaintiff then suggested that the only solution to the problem was that Mr. Arquero's employment with the County be terminated unless there was a method to assure that any contrition on the part of Mr. Arquero was genuine, that his behavior had been modified, and that there was no manner of retaliation.

On July 9, 2004, Plaintiff received a written reprimand from Ms. Gerrard for failing to attend a business meeting that Ms. Gerrard had specifically instructed Plaintiff to attend.  The reprimand also addressed Plaintiff's failure to account for time she took off when she was supposed to attend the meeting and her admission that she smoked in a County vehicle.  The reprimand informed Plaintiff that her failure to attend the meeting was insubordination.

On August 3, 2004, Plaintiff received a written reprimand from Ms. Gerrard for failing to timely report claims to the County insurance carrier resulting in the refusal of the insurer to pay the claims.  Specifically, a Sheriff's vehicle accident was reported to Plaintiff in February 2004, and Plaintiff did not provide a claim number to the insurer until July 7, 2004 after repeated calls from the repair shop and the insurer.  The insurer denied the claim due to late notification. Another accident was reported to Plaintiff in February 2004, the claim was not received by the insurer until July 2004, and the insurer denied the claim.  On July 9, 2004, Ms. Gerrard told

Plaintiff that a lawsuit had been filed against the County and directed Plaintiff to inform the insurer of the lawsuit.  On July 23, Plaintiff had not yet informed the insurer.  The insurer received information from Plaintiff about the lawsuit on July 27, 2004, but Plaintiff characterized the documents regarding the lawsuit as a notice of tort claim rather than a summons requiring an answer to the lawsuit be filed within 20 days.  The reprimand noted that an answer was due on July 29, just two days after the insurer received the information from Plaintiff.  The reprimand further noted that Plaintiff's failure to immediately notify the insurer could have resulted in a default judgment being entered against the County.  The reprimand stated that Plaintiff's conduct constituted unsatisfactory job performance and insubordination.

On August 20, 2004, Plaintiff was given a Notice of Proposed Discipline for her failure to obtain recertification for the defensive driving course.  On September 10, 2004, Plaintiff received a Final Notice of Discipline for her failure to maintain her certification with the NSC and her failure to report her lack of certification to her supervisor.  In light of Plaintiff's previous discipline, Plaintiff was suspended for three days without pay.  Plaintiff appealed the decision.

Plaintiff filed an EEOC Complaint on September 10, 2004 after she received the Final Notice of Discipline informing her of a three day suspension.  In the EEOC Complaint, Plaintiff alleged gender discrimination and retaliation.  She alleged that Mr. Arquero had been retaliating against her because she had refused a sexual invitation in January 2002, that the Notice of Proposed Discipline she had received on August 20, 2004 was retaliation for reporting sexual harassment and that the three day suspension was retaliation for her report of sexual harassment.

On September 10, 2004 and on September 14, 2004, Ms. Gerrard instructed the Plaintiff to obtain her certification with the NSC to teach defensive driving and to provide Ms. Gerrard

with a list of all employees who had taken the defensive driving course from Plaintiff after she lost her certification.  Plaintiff was informed that, because certification was a requirement of her job, she was to have the certification issue resolved no later than October 1, 2004.  On October 8, 2004, Plaintiff received a memorandum from Ms. Gerrard indicating that she had received nothing from Plaintiff regarding the reinstatement of Plaintiff's certification.  Sometime in October, Plaintiff's appeal of her suspension was heard by an independent hearing officer, and following a full evidentiary hearing, the hearing officer upheld the three day suspension.  Plaintiff received the decision of the hearing officer around November 3, 2004.

As of November 8, 2004, Plaintiff had not obtained her certification and had not given Ms. Gerrard the list of employees who had taken the course from an uncertified instructor.  In addition to being aware of this, Ms. Gerrard also came to believe by November 8 that Plaintiff had failed to follow up on a co-worker's request for insurance paperwork, failed to adequately process a claim for the County's insurance provider over a seven or eight month period, and made a racial remark about Mr. Arquero.[3]  On November 8, 2004, Ms. Gerrard gave Plaintiff a Notice of Proposed Discipline proposing to discharge Plaintiff from employment for the failure to obtain recertification, the failure to provide a list of employees who had taken defensive driving from Plaintiff after she lost her certification, failing to respond to a request for insurance paperwork, failing to adequately process a claim for the insurance provider, and for making a racial statement about Mr. Arquero.  A pre-disciplinary meeting was set for November 15, 2004.

_____

[3]Mr. Arquero sent Ms. Gerrard a memo dated August 12, 2004 complaining that, a year and a half earlier, Plaintiff referred to him as a "drunken Indian" in the presence of several other County employees.  The incident of which Mr. Arquero complained coincides with the incident in the fall of 2002, reported by Plaintiff, when she thought Mr. Arquero was driving a County vehicle after an arrest for DWI.

On November 10, 2004, Plaintiff caused a check to be issued to the NSC, allegedly for her recertification.  At the November 15 meeting, Plaintiff produced a copy of the check in response to the issue of her recertification.  On November 16, 2004, Ms. Gerrard issued a Final Decision to Discipline in which Plaintiff was discharged from employment effective that date.  Ms. Gerrard noted that Plaintiff's check to the NSC did not prove that Plaintiff had been recertified to teach defensive driving by the NSC.  She also stated that Plaintiff had been directed to produce a list of employees to whom Plaintiff had taught defensive driving while uncertified, that she had never produced the list, and that Plaintiff's argument that a list would be void because her recertification was retroactive was not supported by any evidence of retroactivity.  With regard to Plaintiff's failure to respond to a coworker's request for insurance paperwork, Ms. Gerrard noted that Plaintiff had not taken responsibility for this failure but had attempted to push responsibility onto the finance department.

The Final Decision gave four bases for Plaintiff's termination.  The first basis was Plaintiff's failure to obtain recertification for the defensive driving course and her failure to provide a list of employees who had attended the course after Plaintiff lost her certification.  The second basis was Plaintiff's failure to obtain, at the request of a coworker, certificates of liability insurance for vehicles being leased by the County thus delaying the lease of the vehicles.  The third basis was Plaintiff's failure over an eight month period, from April 2004 through November 3, 2004, to complete the processing of a claim with the insurance provider.  The fourth and final basis for Plaintiff's termination was the racial statement made by Plaintiff about Mr. Arquero.  In discussing this fourth basis for Plaintiff's termination, Ms. Gerrard wrote, "You have made

11

unsubstantiated accusations about Mr. Arquero, which have been proven to be blatantly false."
See Docket No. 135 Exhibit CC p. 4 ¶ 4.

Plaintiff's First Amended Complaint, filed April 25, 2005, alleges hostile work environment sexual harassment, quid pro quo sexual harassment and retaliation, all in violation of Title VII and the New Mexico Human Right Act.  Plaintiff also alleges a claim under 42 U.S.C. § 1983 for First Amendment retaliation, a claim under 42 U.S.C. § 1983 for violation of her substantive and procedural due process rights under the Fourteenth Amendment, a claim for violation of the New Mexico Inspection of Public Records Act, and a separate claim appealing the administrative decision of suspension.  Plaintiff also alleges a claim for wrongful termination.

Defendants' Answer to the Amended Complaint includes a prayer for a preliminary injunction.  Defendants ask that Plaintiff be prohibited from divulging personal information regarding County employees.  Defendants also ask that Plaintiff be required to return any confidential or personal information regarding County employees to the County.

By Memorandum Opinion and Order filed August 15, 2005 (Doc. 60), this Court accepted Plaintiff's characterization of her wrongful termination claim as one for breach of contract.[4]  In the same Memorandum Opinion and Order, the Court dismissed Plaintiff's procedural and substantive due process claims.

---

[4]Defendants had filed a motion to dismiss this claim because the New Mexico Tort Claims Act immunizes Defendants from tort liability for the tort of wrongful termination.  Plaintiff conceded that Defendants were immune from liability for the tort but argued that the claim was actually a breach of contract claim.  This Court held that the claim was dismissed to the extent it sounded in tort, but that Defendants' motion to dismiss the claim was denied to the extent it was a breach of contract claim.

Defendants filed their Motion for Summary Judgment arguing that Plaintiff's Title VII and New Mexico Human Rights Act discrimination claims must fail because Plaintiff did not timely exhaust these claims.  Defendants also urge that Plaintiff's claim of hostile work environment discrimination fails because the conduct alleged by Plaintiff is not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.  With regard to Plaintiff's retaliation claims under Title VII and the New Mexico Human Rights Act, Defendants contend that they had a legitimate nondiscriminatory business reason for terminating Plaintiff's employment, and Plaintiff cannot show that this reason is a pretext for discrimination.  Defendants maintain they are entitled to summary judgment on Plaintiff's First Amendment claim because Plaintiff did not engage in protected speech and any protected speech was not a substantial or motivating factor in the decision to terminate Plaintiff's employment.  In any event, Defendants assert they would have terminated Plaintiff's employment even in the absence of any protected speech.  Assuming that Plaintiff had an implied employment contract, Defendants contend that they did not breach that contract because Plaintiff was terminated for cause.  Regarding Plaintiff's claim under the New Mexico Public Records Act, Defendants argue that Plaintiff cannot recover damages under the Act because Defendants complied with the Act and because the records sought by Plaintiff were not public records.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000).  The burden of showing an absence of a genuine issue of material fact falls upon the moving party.  See Adler v Wal-Mart Store, Inc., 144 F.3d

664, 670 (10th Cir. 1998). However, when the moving party does not bear the ultimate burden of

persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the

Court that there is an absence of evidence to support the nonmoving party's case. <u>Celotex Corp.

v Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Adler</u>, 144 F.3d at 671. The nonmoving party must then

go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial

sufficient to support a verdict for the nonmovant. <u>Anderson v Liberty Lobby, Inc.</u>, 477 U.S. 242,

248-49 (1986). In ruling on a motion for summary judgment, a Court does not weigh the

evidence, but determines whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

<u>Jeffries v. State of Kansas</u>, 147 F.3d 1220, 1228 (10th Cir. 1998). In making this determination,

the Court must construe all the facts in the record and reasonable inferences that can be drawn

from those facts in a light most favorable to the nonmoving party. <u>Worrell</u>, 219 F.3d at 1204;

<u>Jeffries</u>, 147 F.3d at 1228.

**DISCUSSION**

I.     TITLE VII AND HUMAN RIGHTS ACT DISCRIMINATION CLAIMS

        Plaintiff's Title VII and Human Rights Act discrimination claims include claims for hostile

work environment sexual harassment and claims for quid pro quo sexual harassment. Quid pro

quo sexual harassment involves a conditioning of tangible employment benefits upon the

submission to sexual conduct. <u>Hicks v Gates Rubber Co.</u>, 833 F.2d 1406, 1413 (10th Cir. 1987).

Hostile work environment harassment occurs "where [sexual] conduct has the purpose or effect

of unreasonably interfering with an individual's work performance or creating an intimidating

14

hostile or offensive working environment." <u>Meritor Sav. Bank v. Vinson</u>, 477 U.S. 57, 65 (1986).

Both the Human Rights Act and Title VII require the exhaustion of administrative remedies.  <u>See</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 121 (2002) (exhaustion of administrative remedies required under Title VII); <u>Sonntag v. Shaw</u>, 22 P.3d 1188 (N.M. 2001) (exhaustion of administrative remedies required under the Human Rights Act).  Under the Human Rights Act, a plaintiff is required to file a complaint within 180 days after the unlawful conduct.  N.M. Stat. Ann. 1978 § 28-1-10(A); <u>see also</u> <u>Mitchell-Carr v. McLendon</u>, 980 P.2d 65, 69 (N.M. 1999).  Under Title VII, a plaintiff has 300 days from the date of an unlawful act to file a complaint.[5] <u>Boyer v. Cordant Technologies, Inc.</u>, 316 F.3d 1137, 1138-39 (10th Cir. 2003).

Defendants contend that Plaintiff failed to timely file her EEOC Complaint.  Plaintiff counters that her EEOC Complaint was timely filed in accordance with the continuing violation doctrine.  The continuing violation doctrine applies only to hostile environment claims and does not apply to claims involving discrete discriminatory acts such as claims of quid pro quo sexual harassment.  <u>Morgan</u>, 536 U.S. at 113, 115-17 (2002).  Plaintiff's quid pro quo sexual harassment claim is based on a discrete incident that allegedly occurred in January 2002, and Plaintiff did not file her EEOC Complaint until September 10, 2004.  Thus, the EEOC Complaint was not timely filed with regard to Plaintiff's quid pro quo claim, and Defendants are entitled to

---

[5]In states in which a state agency has authority to investigate employment discrimination ("deferral states"), Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). New Mexico is a deferral state.

summary judgment with regard to Plaintiff's claim under Title VII and the Human Rights Act of quid pro quo sexual harassment.

Because the continuing violation doctrine applies to Plaintiff's hostile work environment sexual harassment claim, the Court will proceed to the merits of this claim.  "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."  Meritor, 477 U.S. at 67 (citation omitted).  The harassing conduct must be "both objectively and subjectively abusive." Turnbull v. Topeka State Hospital, 255 F.3d 1238, 1243 (10th Cir. 2001). There is no "mathematically precise test" for determining whether conduct is sufficiently severe or pervasive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993).  Some factors to be weighed include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. at 23.  The existence of sexual harassment must be determined "in light of the record as a whole."  Meritor, 477 U.S. at 69 (quoting 29 C.F.R. § 1604.11(b) (1985)) (internal quotation marks omitted).  Thus, this Court must examine the totality of the circumstances in reviewing the summary judgment motion with regard to Plaintiff's hostile environment claims. See Davis v. U.S. Postal Svc.,142 F.3d 1334, 1341 (10th Cir. 1998); However, the conduct considered by the Court must still be discriminatory conduct in that it is unwelcome sexual conduct.  See Faragher v. Boca Raton, 524 U.S. 775, 786 (1998) (citing 42 U.S.C. § 2000e-2(a)(1)) (Title VII forbids actions taken on the **basis of sex** that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.") (emphasis added); Smith v. Norwest Financial Acceptance, Inc.,129 F.3d 1408,

1412 (10th Cir. 1997) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986))

(Hostile work environment harassment occurs when unwelcome **sexual** conduct "unreasonably

interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or

offensive working environment.") (emphasis added); Stahl v. Sun Microsystems, Inc., 19 F.3d

533, 538 (10th Cir.1994) ("If the nature of an employee's environment, however unpleasant, is

not due to her gender, she has not been the victim of sex discrimination as a result of that

environment."). For a hostile environment claim to survive summary judgment, an employee must

show that a rational jury could find that the workplace is permeated with discriminatory

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of

employment and create an abusive working environment.  O'Shea v. Yellow Tech. Serv., Inc.,

185 F.3d 1093, 1097 (10th Cir. 1999) (quotations and citations omitted)

      Much of the conduct alleged by Plaintiff does not qualify as discriminatory, unwelcome

sexual conduct.  For instance, her allegation that Mr. Arquero was not happy to see her at the

copy machine and was hostile and disrespectful does not include any allegation of unwelcome

sexual conduct or conduct relating to Plaintiff's gender.  Similarly, her allegation that Mr.

Arquero and others laughed at her after the doors to an elevator closed does not raise an inference

that Plaintiff was subjected to a hostile work environment because of her gender.  This is equally

true of her allegation that Mr. Arquero becomes verbally abusive toward his subordinates around

the end of every fiscal year and the beginning of every calendar year[6] and her other allegations

regarding Mr. Arquero being visibly angry, extremely upset, abusive, etc.  These and similarly

---

[6]If this last allegation gives rise to any inference, it is that Mr. Arquero is generally boorish
toward everyone, and his conduct toward Plaintiff has nothing to do with her gender.

gender neutral allegations are not relevant to Plaintiff's hostile work environment claim and the totality of the circumstances to be considered in determining whether there was sufficiently severe and pervasive discriminatory conduct to create an intimidating, hostile, or offensive working environment.  "Title VII is not a general civility code for the American workplace."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).

Plaintiff's allegations that could be interpreted as discriminatory conduct include a general allegation that there were between ten and twelve incidents between herself and Mr. Arquero occurring over a two year period between the spring of 2002 and June 2004, Mr. Arquero made suggestive remarks at unspecified times, he made derogatory remarks about Plaintiff's gender on March 27, 2002, and, in January 2003, and that Plaintiff went through a doorway in which Mr. Arquero was standing, and Mr. Arquero made "inappropriate contact" with Plaintiff's body as she went past.

Plaintiff has failed to show sufficiently pervasive discriminatory conduct to create a hostile work environment.  By her own evidence, there were only ten to twelve incidents over a period of more than two years, and these incidents were infrequent.  Plaintiff has also failed to show sufficiently severe discriminatory conduct to create a hostile work environment.  Most of the conduct involved mere offensive utterances, and none of the incidents of which Plaintiff complains involved physically threatening or humiliating conduct.  While Plaintiff does allege that Mr. Arquero made inappropriate physical contact with her while she brushed past him in a doorway, she does not specify the nature of this contact, and it does not, by itself or considered in the totality of the circumstances, show sufficiently severe discriminatory conduct to create a hostile work environment or unreasonably interfere with Plaintiff's work performance.  Plaintiff has failed

to present evidence from which a reasonable jury could find that Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.  Accordingly, Defendants are entitled to summary judgment with regard to Plaintiff's Title VII and Human Rights Act claims of hostile work environment sexual harassment.

## II.     TITLE VII AND HUMAN RIGHTS ACT RETALIATION CLAIMS

Claims of retaliation under Title VII and the New Mexico Human Rights Act are analyzed under the McDonnell Douglas burden shifting analysis.  See Annett v. University of Kansas, 371 F.3d 1233 (10th Cir. 2004) (Title VII retaliation); Martinez v. Yellow Freight Sys., Inc., 826 P.2d 962, 964-65 (N.M. 1992) (Human Rights Act).  While Plaintiff's response to the summary judgment motion is argued under the traditional McDonnell Douglas framework for pretext cases, Plaintiff's arguments and evidence suggest that she is arguing for application of mixed-motive analysis in this case.  Under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), a mixed motive analysis was used in any case in which direct evidence of discrimination was presented.  In Desert Palace v. Costa, 539 U.S. 90 (2003), the Supreme Court clarified that direct evidence of discrimination was not required in order to apply mixed-motive analysis.  The Fifth Circuit recently recognized that the holding in Desert Palace blurred the distinction between mixed motive analysis under Price Waterhouse and pretext analysis under McDonnell Douglas.  Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004).  After careful analysis, the Fifth Circuit adopted a modified McDonnell Douglas framework representing a merger of the McDonnell Douglas and Price Waterhouse approaches.  Rachid, 376 F.3d at 312.  I conclude that this modified framework is an appropriate method of analyzing the evidence in this case because

Plaintiff argues both that she has direct evidence of discrimination and that Defendants' proffered reasons for the adverse actions are a pretext for discrimination.

Under the traditional McDonnell Douglas burden shifting analysis, to survive summary judgment with a claim of retaliation, Plaintiff bears the initial burden of showing (1) that she engaged in protected activity; (2) that the Defendants took adverse employment action against her; and (3) that there exists a causal connection between the protected activity and the adverse action. Tran v. Trustees of the State Colleges in Colo., 355 F.3d 1263 (10th Cir. 2004). Once Plaintiff makes this showing, Defendants must articulate a facially legitimate, nondiscriminatory reason for the adverse employment action. Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1212 (10th Cir. 2003). Plaintiff must then respond by showing that the Defendants' asserted reasons for the adverse action are pretextual. Id. Under the Fifth Circuit modified framework, the Plaintiff continues to bear the burden of making a prima facie showing of discrimination and the Defendant still must articulate a facially legitimate, nondiscriminatory reason for the adverse employment action. Rachid, 376 F.3d at 312. Plaintiff then bears the burden of offering sufficient evidence to create a genuine issue of fact that either (1) the Defendants' proffered reason is a pretext for discrimination; or (2) the Defendants' reason is only one reason for its conduct, and another motivating factor is the Plaintiff's protected activity. Id. Of course, if the Plaintiff demonstrates pretext, summary judgment is not appropriate. Wells, 325 F.3d at 1212. If, on the other hand, the Plaintiff demonstrates a retaliatory factor was a substantial, motivating factor in the decision, Defendants may still be entitled to summary judgment if they show that they would

have made the same decision even if they had not considered Plaintiff's protected activity.[7]

Rachid, 376 F.3d at 312.  Because Defendants bear the burden of showing they would have made

the same decision in the absence of a discriminatory motive, Defendants are only entitled to

summary judgment if the record demonstrates as a matter of law that the Defendants would have

terminated Plaintiff even if they had not considered her protected activity in reaching their

decision.  See EEOC v. Warfield-Rohr Casket Co., Inc., 364 F.3d 160, 164 (5th Cir. 2004).  In

other words, Defendants are not entitled to summary judgment if a reasonable jury could conclude

that Defendants would not have terminated Plaintiff if they had not considered her protected

activity in reaching their decision.  Id. at 165.

Defendants concede, for purposes of their motion for summary judgment, that Plaintiff has

made a prima facie showing of retaliation.  They contend that they have a legitimate reason for the

adverse actions taken with regard to Plaintiff, namely that Plaintiff was suspended then terminated

for repeated poor performance and insubordination.  Because Defendants have articulated a

facially legitimate reason for their actions, Plaintiff bears the burden of showing that Defendants'

asserted reasons for the adverse actions are a pretext for discrimination or that a discriminatory

motive was a substantial motivating factor for the decision.

---

[7]Under the 1991 amendment to the Civil Rights Act of 1964 (also known as § 107 of Title VII), Defendants would avoid only damages but not liability by proving the "same decision" defense.  42 U.S.C. § 2000e-2(m).  However, § 107 does not apply to retaliation claims.  Kubicko v. Ogden Logistics Serv., 181 F.3d 544, 552 n.6 (4th Cir. 1999); McNutt v. Bd. of Tr., 141 F.3d 706, 708-09 (7th Cir. 1998); Woodson v. Scott Paper Co., 109 F.3d 913, 932-36 (3d Cir. 1997); Tanca v. Nordberg, 98 F.3d 680, 682-85 (1st Cir. 1996); Behne v. Microtouch Sys., Inc., 58 F.Supp.2d 1096 (N.D.Cal.1999) aff'd 11 Fed.Appx. 856, 860 (9th Cir. 2001) (unpub).  Thus, for a retaliation claim under Title VII, the affirmative defense under Price Waterhouse continues to be a complete defense to both damages and liability.

In order to show pretext, a plaintiff is required to show that the defendant's tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason. Burn v. Bd. of County Com'rs of Jackson County, 330 F.3d 1275, 1283 (10th Cir. 2003). Plaintiffs typically show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Jones v. Barnhart, 349 F.3d 1260, 1266 (10th Cir. 2003). A plaintiff may also demonstrate that an employer's reasons for an adverse employment action are pretextual by showing that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of belief. Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1317 (10th Cir. 1999) overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). A plaintiff typically makes a showing of pretext in one of three ways: 1) with evidence that the defendant's stated reason was false; 2) with evidence that the defendant acted contrary to a written policy prescribing the action taken by defendant; or 3) with evidence that the defendant acted contrary to an unwritten policy or company practice. Kendrick v. Penske Transp. Services, Inc., 220 F.3d 1220, 1230 (10th Cir. 2000). A plaintiff who wishes to show that a defendant acted contrary to an unwritten policy or practice often does so by showing that she was treated differently from other similarly situated employees who violated work rules of comparable seriousness. Id. A plaintiff's opinion that his or her performance was satisfactory is not evidence of pretext. Bullington, 186 F.3d at 1317-18. Close temporal proximity between a plaintiff's protected activity and the adverse employment action is a factor in determining whether the employer's proffered reasons for the action are a pretext for discrimination. Pastran v. K-Mart

22

Corp., 210 F.3d 1201 (10th Cir. 2000).  However, close temporal proximity by itself is not

sufficient to raise an issue of fact with regard to pretext.  Conner v. Schnuck Mkts., Inc., 121

F.3d 1390, 1397 (10th Cir.1997).  A plaintiff need not always present additional evidence in order

to show pretext; a plaintiff's prima facie case may itself cast sufficient doubt on a defendant's

proffered nondiscriminatory reason to satisfy his burden of showing pretext.  English v. Colorado

Dept. of Corrections, 248 F.3d 1002, 1009 (10th Cir. 2001).  Plaintiff's ultimate burden under the

McDonnell Douglas framework is to produce evidence from which a reasonable trier of fact could

conclude that Defendant acted with discriminatory intent.  See Hysten v. Burlington N. and Santa

Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002); Hardy v. S.F. Phosphates Ltd Co., 185 F.3d

1076, 1079-80 (10th Cir.1999); see also Simms v. Oklahoma ex rel. Dep't of Mental Health and

Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir.1999); Anderson v. Coors Brewing Co.,

181 F.3d 1171, 1178 (10th Cir.1999).  Title VII does not make even irrational employment

decisions illegal.  Kendrick, 220 F.3d at 1232.

Plaintiff attempts to show pretext by pointing out the close temporal proximity between

Plaintiff's termination and several other events.  First, she points to the temporal proximity

between Mr. Arquero's August 12, 2004 memorandum to the County Manager complaining that

Plaintiff referred to him as a "drunken Indian" and the August 20 Final Notice of Discipline that

resulted in her three day suspension. She also points to the temporal proximity between her June

27, 2004 memorandum to Ms. Gerrard complaining of sexual harassment and Mr. Arquero's

August 12, 2004 complaint about Plaintiff.

In addition to her arguments of temporal proximity, Plaintiff contends she has sufficient

evidence of pretext because Defendants in this case filed a counterclaim.  She argues that other

employees, including Mr. Arquero, who violated work rules were not fired or disciplined.  Finally,

Plaintiff urges that there is evidence of pretext because one of the specific bases given in the Final

Decision for her termination were her allegations regarding Mr. Arquero, and that all the other

bases for her termination were included as bases for her earlier three day suspension.

Plaintiff's arguments on the temporal proximity of the adverse actions taken against her

and Mr. Arquero's complaint show a misunderstanding of the temporal proximity inquiry.  The

temporal proximity important to Plaintiff's case is the proximity of the adverse actions to

Plaintiff's protected activity.  Mr. Arquero's complaint is not Plaintiff's protected activity, so the

temporal proximity between his complaint and the adverse actions taken against Plaintiff are

irrelevant.  However, the Court notes that there is temporal proximity between Plaintiff's June 27

and 30, 2004 memoranda to Ms. Gerrard, unquestionably protected activity under Title VII, and

several adverse actions including written reprimands on July 9 and August 3, 2004, the Notice of

Proposed Discipline dated August 20, 2004 and the Final Notice of Discipline dated September

10, 2004.  There is also temporal proximity between her September 10, 2004 EEOC Complaint,

also protected activity, and the November 3, 2004 hearing officer decision upholding a three-day

suspension, the November 8, 2004 Notice of Proposed Discipline, and the November 14, 2004

Final Decision to Discipline.  The Court also reads Plaintiff's response as arguing that Mr.

Arquero's complaint against her was an adverse employment action taken in retaliation for her

protected activity.

As previously noted, close temporal proximity between protected activity and an adverse

employment action is not sufficient by itself to show pretext.  That is particularly true in this case

where the protected activity followed several reprimands and other employee disciplinary

24

measures, and the adverse employment actions that occurred subsequent to her protected activity were a continuation of the discipline taken prior to her protected activity.  While Title VII protects victims of sexual harassment from being terminated in retaliation for reporting harassment, an employee's complaint of harassment does not immunize her from being subsequently disciplined or terminated for inappropriate workplace behavior.  Hall v. Bodine Elec. Co., 276 F.3d 345, 356 (7th Cir. 2002).

With regard to the suggestion that Mr. Arquero's complaint was an adverse action against Plaintiff, an adverse employment action may only be taken by an employer.  A person qualifies as an employer under Title VII if he or she serves in a supervisory position and exercises significant control over a plaintiff's hiring, firing or conditions of employment.  Sauers v. Salt Lake County., 1 F.3d 1122, 1125 (10th Cir. 1993). Plaintiff offers no evidence that Mr. Arquero had any supervisory authority over her or had any control over her hiring, firing or conditions of employment.  Thus, his actions cannot be imputed to the County, and his filing of a complaint against Plaintiff was not an adverse employment action for purposes of Title VII.

Plaintiff's argument that the Defendants' counterclaim is additional evidence of pretext is not persuasive.  As Plaintiff correctly notes, many courts recognize that a counterclaim or lawsuit filed by an employer can be a retaliatory adverse action for purposes of a Title VII claim, and a claim of retaliation based on a counterclaim or lawsuit is not subject to dismissal under Fed. R. Civ. P. 12(b)(6).  See e.g., EEOC v. Outback Steakhouse of Florida, Inc., 75 F.Supp.2d 756 (N.D. Ohio 1999).  However, Plaintiff has not alleged or exhausted a retaliation claim based on the Defendants' counterclaim in this case and only offers the counterclaim as evidence of pretext.

Thus, the Court may consider the nature of Defendants' counterclaim in determining whether it is evidence of pretext.

Defendants included a prayer for a preliminary injunction in their Answer to Plaintiff's First Amended Complaint. Defendants did not seek a permanent injunction, so the prayer for relief is not quite properly characterized as a counterclaim. Defendants did not request any damages from Plaintiff or accuse Plaintiff of any wrongdoing. They merely sought to protect confidential information during the course of this lawsuit to which Plaintiff might be privy based on the nature of her former position as personnel coordinator for the County. While the preliminary injunction was denied, this was due in part to a Confidentiality Order entered in this case protecting confidential information affecting the privacy rights of the parties and third persons. See Docket No. 61 (Order denying preliminary injunction) and Docket No. 40 (Confidentiality Order).

Defendants' request for preliminary injunction, even in conjunction with the temporal proximity of Plaintiff's protected activity to the adverse actions, is not evidence of pretext. It does not reveal weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in Defendants' tendered reasons for its actions with regard to Plaintiff. It does not demonstrate that Defendants' proffered explanation is unworthy of belief. Nor does it raise a fact issue as to whether a retaliatory reason or Defendants' proffered reasons more likely motivated Defendants' decision.

Plaintiff attempts to show pretext by offering evidence that other County employees who violated work rules were not fired or otherwise disciplined. A plaintiff may show pretext by providing evidence that she was treated differently from other similarly situated employees who

violated work rules of comparable seriousness.  <u>Green v. New Mexico Dep't of Labor</u>, 420 F.3d

1189, 1194 (10th Cir. 2005).  "A similarly situated employee is one who deals with the same

supervisor and is subject to the same standards governing performance evaluation and discipline."

<u>Id.</u>

Plaintiff provides information regarding six other County employees.  The first employee

she compares herself to is Mr. Arquero who allegedly drove a county vehicle while intoxicated

and was not disciplined.  While the seriousness of Mr. Arquero's conduct might be comparable to

the conduct allegedly engaged in by Plaintiff, Mr. Arquero is not a similarly situated employee

because he does not share the supervisor to whom Plaintiff answered.  Thus, evidence of his

misconduct and the apparent lack of discipline does not raise a fact issue with regard to pretext.

The second employee to whom Plaintiff compares herself, MM,[8] does answer to the

supervisor to whom Plaintiff answered during her employment.  Thus, MM is a similarly situated

employee.  However, the work rule violations for which MM was disciplined were (1) giving out

incorrect information concerning benefits and (2) use of the telephone for excessive personal calls.

In contrast, among the reasons given for Plaintiff's termination were her continued failure to

obtain recertification to perform one of her job responsibilities, insubordination for failing to

provide a list of employees who had received training from an uncertified instructor, performance

deficiencies including causing the delay in the lease of county vehicles by failing to provide

certificates of liability, and failing to process an insurance claim over an eight month period.  The

misconduct of MM cannot reasonably be viewed as of comparable seriousness to the violations

_____

[8]Initials are used in place of names to protect the privacy of these third persons.

for which Plaintiff was terminated.  Thus, the evidence regarding MM does not create a genuine issue of fact regarding pretext.

Plaintiff provides no evidence that the third employee to whom she compares herself, AJ, was supervised by Plaintiff's former supervisor.  However, even assuming that Plaintiff and AJ were similarly situated, the work rule violations for which AJ was disciplined are not comparably as serious as those for which Plaintiff was disciplined.  AJ received written discipline for excessive personal use of the telephone and for poor attendance.  As with the misconduct of MM, the misconduct of AJ cannot be reasonably considered as serious as the violations for which Plaintiff was disciplined, and the evidence regarding AJ does not raise a genuine issue regarding pretext.

Plaintiff's own evidence shows that the sixth employee to whom she compares herself, MF, was not similarly situated to Plaintiff because he was not supervised by Plaintiff's former supervisor.  Therefore, evidence concerning any misconduct by MF does not raise a genuine issue regarding pretext.

The fourth and fifth employees to whom Plaintiff compares herself are the County Clerk and the County Sheriff.  Both of these employees hold elected positions under New Mexico State Law, N.M. Stat. Ann. 1978 § 4-38-6(C), and therefore do not answer to Plaintiff's former supervisor and are not subject to the standards of performance and discipline under which Plaintiff's employment was governed.  Accordingly, any evidence of alleged misconduct by the County Clerk and County Sheriff are not relevant to whether Defendants' proffered reasons for Plaintiff's termination are a pretext for retaliation.

Plaintiff's last argument with regard to pretext is that one of the reasons given in the Final Decision for her termination was that she had made unsubstantiated accusations about Mr.

28

Arquero that were proven to be blatantly false.  Plaintiff argues that the other reasons given for her discharge are obviously sham reasons because she had already been disciplined for some of these same infractions when she received a three day suspension, and the other infractions occurred before her three day suspension.  Plaintiff also argues that the fact that her accusations about Mr. Arquero were included as a basis for her discharge is direct evidence of retaliation.

The reasons given for Plaintiff's discharge other than her conduct toward Mr. Arquero are not identical to the reasons for which she received a three day suspension.  Plaintiff received a Final Notice of Discipline for a three day suspension without pay on September 10, 2004.  The only stated basis of the three day suspension was Plaintiff's loss of her defensive driving certification in 2003 and her failure through the date of the suspension to obtain recertification despite being directed to do so.  The Final Decision for Plaintiff's discharge dated November 16, 2004 included Plaintiff's continued failure from September 10, 2004 through the date of her discharge to obtain defensive driver recertification despite being instructed on September 10 to obtain recertification by October 1, 2004.  This is not the same conduct for which she received a three day suspension.  Being disciplined for misconduct does not insulate a person from further discipline for continuing the same ongoing misconduct.  Plaintiff's failure to obtain recertification through September 10, 2004 was the subject of her three day suspension.  Her continued failure from September 10 through the date of her termination was the subject of her termination and was thus a basis for termination separate and independent from the basis of her three day suspension.  Accordingly, there is no evidence of pretext based on an identity of reasons for the three day suspension and the termination.

Besides the basis regarding Mr. Arquero and the basis regarding defensive driving certification, the Final Decision for Plaintiff's discharge was based on Plaintiff's failure on or about October 14, 2004 to provide certificates of liability for vehicles that were being leased and her failure from April 2004 through November 3, 2004 to process an insurance claim.  These infractions did not occur prior to Plaintiff's September 10, 2004 three day suspension.  Thus, Plaintiff's argument that these reasons for termination are a sham because they occurred before the three day suspension is based on an incorrect factual assumption.  Accordingly, it provides no evidence of pretext.

The last reason given for Plaintiff's discharge was the complaint by Mr. Arquero that Plaintiff had made a racial statement about him and the substantiation of that complaint.[9]  The Final Decision notes that Plaintiff's conduct in making the statement was inflammatory and rude and constituted racial stereotyping.  Also mentioned with regard to Mr. Arquero was that Plaintiff had made unsubstantiated allegations about him.  Plaintiff characterizes this basis as providing direct evidence of retaliation.

Even assuming that these statements are direct evidence of retaliation, Defendants have more than proved they would have made the same decision to terminate Plaintiff's employment even if her complaints about Mr. Arquero had not been considered.  Plaintiff had a history of performance problems in her job dating back to August 6, 2002.  One of Plaintiff's job responsibilities was defensive driving instruction to County employees.  She lost her certification

---

[9]Plaintiff disputes that she made any racial statement regarding Mr. Arquero.  However, the Court must examine the facts as they appeared to the person making the decision to terminate Plaintiff.  Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004) (citing Kendrick, 220 F.3d at 1231).

as an instructor but continued to provide instruction, and employees who received instruction after she lost her certification were not properly certified themselves. Plaintiff failed to obtain recertification despite repeated direction to do so. Another County employee was required to perform Plaintiff's duty to provide defensive driving instruction because Plaintiff was not certified. Plaintiff gave reassurances that she would take care of the problem and obtain recertification, but continued to fail to do so. Plaintiff was disciplined for her failure to obtain recertification, and was given further instruction to obtain recertification. Plaintiff continued to fail to address the problem. Plaintiff did finally have a check sent to the NSC to begin the process of being recertified. However, she did not send this check until after she received the November 8, 2004 notice of proposed discipline proposing her discharge.

In addition to her problems with certification for defensive driving, Plaintiff did not timely process insurance claims and did not provide a list of employees who had received defensive driving instruction from her after she lost her certification. Additionally, she caused a delay in the lease of county vehicles by failing to timely provide certificates of liability.

Defendants clearly intended to discharge Plaintiff for the legitimate, nondiscriminatory reasons not including any allegations made by Plaintiff regarding Mr. Arquero. Defendants' November 8, 2004 Notice of Proposed Discipline clearly stated that the County was proposing to terminate Plaintiff's employment. The reasons given in the notice included Plaintiff's ongoing failure to obtain recertification for defensive driving, her failure to provide a list of employees who had received instruction from her after she lost her certification, her failure to provide certificates of liability for vehicles to be leased by the County, her failure to process an insurance claim from April 2004 through November 3, 2004, and her making a racial statement about Mr. Arquero in

31

front of several other employees.  The fact that the Final Decision includes a one sentence remark about Plaintiff's allegations regarding Mr. Arquero simply does not create an issue of fact as to whether her protected activity was a motivating factor for her discharge.  No  reasonable jury could conclude that Defendants would not have terminated Plaintiff if they had not considered her protected activity in reaching their decision.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's Title VII and Human Rights Act claims of retaliation.

III.   PLAINTIFF'S FIRST AMENDMENT CLAIM

A public employer cannot retaliate against an employee for exercising her constitutionally protected right of free speech.  Finn v. New Mexico, 249 F.3d 1241, 1246 (10th Cir. 2001).  A First Amendment retaliation claim is evaluated using a well-established four part inquiry in which (1) the Court determines whether the Plaintiff's speech involves a matter of public concern; and, if so (2) the Court balances the Plaintiff's interest in commenting on matters of public concern against the interests of the Defendants, as employers, in promoting the efficiency of the public services it performs through its employees; then, if the balance tips in favor of the Plaintiff (3) the Plaintiff must show that the speech was a substantial or motivating factor in a detrimental employment decision; then, if the Plaintiff establishes that the speech was a factor, (4) the Defendants may demonstrate that they would have taken the same action with regard to Plaintiff even in the absence of the protected speech.  Id. at 1246; Lybrook v. Farmington Municipal Schools Bd. of Educ., 232 F.3d 1334 (10th Cir. 2000).

"[A] public employee's statements on issues not of general public concern are unprotected by the First Amendment."  Wilson v. City of Littleton, 732 F.2d 765, 767 (10th Cir. 1984). "Whether an employee's speech addresses a matter of public concern must be determined by the

content, form, and context of a given statement . . ..” Id. at 768 (citing Connick v. Myers, 461 U.S. 138 (1983)).  A government employee’s speech is of public concern if it is of interest to the community, whether for social, political, or other reasons.  Jantzen v. Hawkins, 188 F.3d 1247, 1257 (10th Cir. 1999).  To be protected speech, an expression must sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government.  Wilson, 732 F.2d at 768. It is not sufficient that the subject matter of an employee’s speech be of public concern; the actual content of the speech - what is actually communicated on the topic - must itself be of public concern.  Wilson, 732 F.2d at 769.  Speech which discloses evidence of corruption, impropriety, or other malfeasance on the part of public officials is speech on a matter of public concern. Schuler v. City of Boulder, 189 F.3d 1304, 1308 (10th Cir. 1999).  Speech that seeks to expose improper operations of the government or questions the integrity of government officials is also speech on a matter of public concern.  Conaway v. Smith, 853 F.2d 789, 797 (10th Cir. 1988). Additionally, First Amendment protection applies to protected speech even when a public employee communicates privately with her employer instead of expressing her views publicly. Givhan v. Western Line Consol. Sch. Dist., 439 U.S. 410, 413 (1979).  Matters solely of personal interest to government employees, however, are not protected by the First Amendment.  Dill v. City of Edmond, Oklahoma, 155 F.3d 1193, 1202 (10th Cir. 1998).  Speech related to internal personnel disputes ordinarily does not involve matters of public concern.  Id.

Plaintiff alleges that her employment was terminated, at least in part, for engaging in protected speech.  According to Plaintiff, she engaged in protected speech in the fall of 2002 when she made statements to co-workers that Mr. Arquero, who had been arrested for DWI, was driving a County owned vehicle in violation of County policy.

33

Defendants urge that Plaintiff's speech was not protected because Plaintiff referred to Mr. Arquero as a "drunken Indian," because Plaintiff's remarks were made to a co-worker rather than a supervisor or to news media, and because Plaintiff waived her First Amendment rights to comment on other County employees.  Plaintiff disputes that she referred to Mr. Arquero as a "drunken Indian."  Because the Court must assume the facts in a light most favorable to Plaintiff, I will assume, for purposes of analyzing this claim, that Plaintiff did not refer to Mr. Arquero as a "drunken Indian."  Protected speech does not lose its protected character when it is made privately to co-workers rather than in a public forum.  See Smith v. Fruin, 28 F.3d 646, 653 (7th Cir. 1994); VanTassel v. Brooks, 355 F.Supp.2d 788, 798 (W.D. Pa. 2005); Hagemann v. Molinari, 14 F.Supp.2d 277, 283 (E.D.N.Y. 1998); Pilkington v. Bevilacqua, 439 F.Supp. 465, 475 (D.R.I. 1977).  Thus, the fact that Plaintiff's comments regarding Mr. Arquero were made to one or more co-workers rather than to the media or even a supervisor does not lead to the conclusion that the speech was not protected.

Defendants' argument that Plaintiff waived her First Amendment rights is based on a confidentiality agreement she signed.  Plaintiff's employment with the County gave her access to employee personnel files including social security numbers, information on disabilities, and information on discipline.  Accordingly, Plaintiff signed a confidentiality agreement to keep confidential all information about employees that must be kept confidential by state law or County Ordinance.  See Defendant's Answer to 1st Amended Complaint (Doc. 34), Exhibit A. However, the comments made by Plaintiff regarding Mr. Arquero were about his DWI arrest and her concerns that he might be driving County vehicles.  An arrest is a matter of public record and not "confidential" government information concerning an employee.  Thus, even assuming

34

Plaintiff waived her First Amendment rights with regard to information covered under the confidentiality agreement, Plaintiff's expression was not covered by the agreement and any First Amendment protection was not waived.

According to Plaintiff, she expressed concern that Mr. Arquero was driving county vehicles following a DWI arrest.  This speech discloses evidence of corruption, impropriety, or other malfeasance on the part of a public official so it is protected under the First Amendment.

Under the second prong of the Pickering balancing test, the Court normally balances a plaintiff's interest in free speech against the Government employer's interest in promoting efficiency of public service.  However, the Defendants do not argue that they had interests outweighing Plaintiff's interests in free speech.  Rather Defendants urge that Plaintiff's speech was not the cause of her termination, and she would have been discharged even in the absence of her protected speech.  Thus, the Court will turn to the last prongs of the Pickering test.

Normally the third prong, whether the speech was a substantial or motivating factor in the challenged employment decision, presents issues of fact for a jury.  Dill, 155 F.3d at 1202.  Thus, a plaintiff need only present evidence, for summary judgment purposes, from which a jury reasonably might find that plaintiff's protected speech was a substantial motivating factor in defendant's decision.  Maestas v. Segura, 416 F.3d 1182, 1188 (10th Cir. 2005).  An employee "need not prove his speech was the sole reason for defendants' action." Copp v. Unified School Dist. No. 501, 882 F.2d 1547, 1553 (10th Cir. 1989).  Nor must an employee prove that the constitutionally protected speech was the "but for" cause of the subsequent adverse employment action.  Maestas, 416 F.3d at 1188.  However, a plaintiff must show more than the presence of an improper reason in a defendant's mind favoring the adverse action when the reason weighed so

lightly in comparison with other factors that it exerted no influence on the decision.  Id.  "Where an improper factor exerts little or no influence on the employer's decision, such factor cannot be said to have played a *substantial* part in the employment decision."  Id. at 188 n.6.  A plaintiff must show that her protected speech *played a substantial part* in the defendant's decision to adversely alter her conditions of employment.  Id. at 1188.

"Adverse action in close proximity to protected speech may warrant an inference of retaliatory motive."  Maestas, 416 F.3d at 1189.  "On the other hand, evidence of a long delay between an employee's speech and challenged conduct, or evidence of intervening events, tend to undermine any inference of retaliatory motive and weaken the causal link."  Id. (internal citations omitted).

The evidence shows that Plaintiff engaged in protected speech in the fall of 2002.  She was discharged from her employment on November 16, 2004.  During the intervening two years, Plaintiff lost her certification to teach defensive driving, failed to timely process a Sheriff's vehicle accident reported in February 2004, and failed to complete the processing of a claim filed in April 2004.  The November 8, 2004 Notice of Proposed Discipline proposed to discharge Plaintiff for four reasons including (1) Plaintiff's ongoing failure to obtain recertification and provide a list of employees who received defensive driving instruction from an uncertified instructor (2) Plaintiff's failure to respond to a request for insurance paperwork; (3) Plaintiff's failure to adequately process an insurance claim; and (4) Plaintiff's use of the term "drunken Indian" in reference to Mr. Arquero.  The Final Decision to terminate Plaintiff's employment included these reasons and added a comment that Plaintiff had made unsubstantiated accusations about Mr. Arquero.

Plaintiff has failed to show that her protected speech in the fall of 2002 was a substantial motivating factor in the Defendants' decision to terminate her employment. While the Final Decision includes as a basis for her termination that Plaintiff had made unsubstantiated accusations about Mr. Arquero, this is not sufficient to raise a genuine issue that Plaintiff's protected speech about Mr. Arquero driving County vehicles after his DWI arrest played a substantial part in the decision. "The First Amendment is not a tenure provision, and does not protect public employees from legitimate government action." Maestas, 416 F.3d at 1190 (citing Rutan v. Republican Party, 497 U.S. 62, 76 (1990)). "A public employee, by engaging in constitutionally protected speech, ought not be able to prevent his supervisor from assessing employment needs and making decisions on the basis of those needs simply because the protected conduct makes the [supervisor] more certain of the correctness of [his] decision." Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 286 (1977).

Even if Plaintiff's evidence were sufficient to raise a fact issue with regard to whether her protected speech was a substantial, motivating factor in the decision to terminate her employment, the evidence shows that Defendants would have made the same decision to terminate Plaintiff's employment even in the absence of her protected speech. The Supreme Court has said that in First Amendment retaliation actions, "the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." Bd. of County Comm'rs, Wabaunsee County, Kan. v. Umbehr, 518 U.S. 668, 675 (1996) (citing Mt. Healthy, 429 U.S. at 287); see also, Copp v. Unified Sch. Dist. No. 501, 882 F.2d 1547, 1554 (10th Cir.1989); Ballard v. Muskogee Regional Medical Center, 238 F.3d 1250, 1253 (10th Cir. 2001). The evidence shows that Plaintiff failed repeatedly to obtain recertification to teach defensive

37

driving and that another County employee had necessarily assumed her duties to teach the course. The evidence also shows that Plaintiff received discipline on more than one occasion for failing to timely process insurance claims.  No reasonable jury could conclude, based on this evidence, that Defendants would not have terminated Plaintiff in the absence of her protected speech.  Thus, Defendants are entitled to summary judgment with regard to Plaintiff's claim under the First Amendment.

IV.    THE COURT WILL DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION
        OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS

        Under 28 U.S.C. § 1367(c)(3), this Court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction.  This Court's original jurisdiction over Plaintiff's Complaint was predicated on federal question jurisdiction over Plaintiff's Title VII claims and her claims under 42 U.S.C. § 1983 for First Amendment retaliation and for violation of her substantive and procedural due process rights under the Fourteenth Amendment.  By Memorandum Opinion and Order filed August 15, 2005 (Doc. 60), the Court dismissed Plaintiff's procedural and substantive due process claims.  As noted above, the Court will grant judgment to Defendants on Plaintiff's Title VII claims and her First Amendment retaliation claim.  Plaintiff's remaining claims are all brought pursuant to state law, and in accordance with 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over these claims.  Plaintiff's remaining claims will be dismissed without prejudice.  The Court cautions Plaintiff that any statute of limitations on the state law claims are governed by 28 U.S.C. § 1367(d).

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. 135) is hereby GRANTED IN PART with regard to Plaintiff's claims of discrimination under Title VII and the New Mexico Human Rights Act, her claims of retaliation under Title VII and the New Mexico Human Rights Act, and her claim of First Amendment retaliation under 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3) and these claims are accordingly DISMISSED WITHOUT PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE